## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ARCTIC GLACIER INTERNATIONAL, INC., | ) | Chapter 15 |
| | ) | |
| Debtors in a Foreign Proceeding. | ) | Case No. 12-10605 (KG) |
| | ) | |
| _____ | ) | |
| | ) | |
| ELDAR BRODKSI ZARDINOVSKY a/k/a ELDAR | ) | |
| BRODSKI a/k/a ELDAR BRODSKI | ) | |
| (ZARDINOVSKY); EB BOOKS, INC.; EB | ) | |
| DESIGN, INC.; EB ONLINE, INC.; EB IMPORTS, | ) | |
| INC.; LAZDAR INC.; ELDAR BRODSKI INC.; Y | ) | |
| CAPITAL ADVISORS INC.; VALLEY WEST | ) | |
| REALTY INC.; RUBEN BRODSKI; RUBEN | ) | |
| BRODSKI INC.; ESTER BRODSKI; and | ) | |
| YEHONATHAN BRODKSI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 15-51732 (KG) |
| | ) | |
| ARCTIC GLACIER INCOME FUND; JAMES E. | ) | |
| CLARK; GARY A. FILMON; DAVID R. SWAINE; | ) | |
| and HUGH A. ADAMS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Dated: April 7, 2016
        Wilmington, Delaware

Paul N. Heath (No. 3704)
Marcos A. Ramos (No. 4450)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

David Woodcock (Texas Bar No. 24028140)
Mark W. Rasmussen (Texas Bar No. 24086291)
Arielle S. Tobin (Texas Bar No. 24079423)
Allison L. Fuller (Texas Bar No. 24087547)
JONES DAY
2727 North Harwood Street
Dallas, TX 75201

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

I.    The Court Orders and Plan Release Are Enforceable and Bar All of Plaintiffs' Claims ............................................................................................................................ 3

        A.    The court orders and Plan release broadly cover the subject of Plaintiffs' claims .................................................................................... 4

        B.    The court orders and Plan release are enforceable against Plaintiffs ......... 7

II.    The Fraud Claims in Counts V and VI Have No Merit .................................................... 10

        A.    The fraud allegations do not give rise to a strong inference of scienter ................................................................................................... 10

        B.    Defendants had no duty to disclose the supposedly omitted information ................................................................................................ 12

III.    The Negligence-Based Claims in Counts I, II, and IV Have No Merit ........................... 14

        A.    Count I should be dismissed because Defendants' only duty was to comply with the clear, unambiguous terms of the Plan ........................... 15

        B.    Count II should be dismissed because Plaintiffs identify nothing to support a conclusion that Defendants owed them a duty to comply with Rule 10b-17 or the FINRA rules ....................................................... 16

        C.    Count IV should be dismissed because Plaintiffs do not have standing to sue for negligent misrepresentation and have not pled reliance .................................................................................................. 18

IV.    The Individual Defendants Did Not Owe Unitholders Any Fiduciary Duty So Count III Must Be Dismissed ........................................................................................ 19

CONCLUSION ...................................................................................................................... 20

RLF1 14320591v.1

# TABLE OF AUTHORITIES

**Page**

CASES

*BCE Inc. v. 1976 Debentureholders*,
   3 S.C.R. 560 (2008) ..................................................................................20

*Brickman v. Tyco Toys, Inc.*,
   722 F. Supp. 1054 (S.D.N.Y. 1989).........................................................18

*Brug v. The Enstar Group, Inc.*,
   755 F. Supp. 1247 (D. Del. 1991)............................................................18

*Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989)......................................................................12

*Goldie v. Cox*,
   130 F.2d 695 (8th Cir. 1942) ......................................................................8

*Grossman v. Waste Mgmt., Inc.*,
   589 F. Supp. 395 (N.D. Ill. 1984) ............................................................13

*Halpern v. Lightyear Network Solutions, Inc.*,
   No. 12-cv-340, 2012 WL 4482680 (D. Nev. Sept. 26, 2012), *motion
   granted by* 2013 WL 275598 (D. Nev. Jan. 23, 2013)..............................19

*In re Adobe Sys., Inc. Sec. Litig.*,
   767 F. Supp. 1023 (N.D. Cal. 1991) .........................................................19

*In re Alpharma Sec. Litig.*,
   372 F.3d 137 (3d Cir. 2004)......................................................................11

*In re Bowen*,
   174 B.R. 840 (S.D. Ga. 1994).....................................................................5

*In re Donald J. Trump Casino Sec. Litig. Taj Mahal Litig.*,
   7 F.3d 357 (3d Cir. 1993) .........................................................................14

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008), *aff'd sub nom.*, 639 F.3d 623 (3d Cir.
   2011) .........................................................................................................19

*In re Howe*,
   913 F.2d 1138 (5th Cir. 1990) ...............................................................5, 16

-ii-

*In re KB Toys, Inc.*,
  470 B.R. 331 (Bankr. D. Del. 2012) ..............................................................8

*In re Mariner Post-Acute Network, Inc.*,
  303 B.R. 42 (Bankr. D. Del. 2003) ................................................................8

*In re Szostek*,
  886 F.2d 1405 (3d Cir. 1989).........................................................................5

*In re Van DeMoolen Holding N.V. Sec. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005).........................................................12

*In re Worlds of Wonder Sec. Litig.*,
  721 F. Supp. 1140 (N.D. Cal. 1989) ............................................................19

*Javitch v. First Montauk Fin. Corp.*,
  279 F. Supp. 2d 931 (N.D. Ohio 2003)............................................... *passim*

*Jones v. Chemetron Corp.*,
  212 F.3d 199 (3d Cir. 2000)...........................................................................9

*Karathansis v. THCR/LP Corp.*,
  No. 06-1591, 2007 WL 1234975 (D.N.J. Apr. 25, 2007).................... *passim*

*Lutgert v. Vanderbilt Bank*,
  508 F.2d 1035 (5th Cir. 1975) .....................................................................18

*Mihara v. Dean Wittier & Co.*,
  619 F.2d 814 (9th Cir. 1980) .......................................................................17

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000)..........................................................................14

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
  679 F.3d 972 (8th Cir. 2012) ..................................................................12, 13

*Scott v. Dime Sav. Bank*,
  886 F. Supp. 1073 (S.D.N.Y. 1995)..............................................................17

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000)..........................................................................11

*Shields v. Newbridge Secs., Inc.*,
  1992 Bankr. LEXIS 1706 (Bankr. E.D. Pa. Oct. 29, 1992).........................17

-iii-

*Stoll v. Gottlieb*,
    305 U.S. 165 (1938)........................................................................................5

*Toner v. Allstate Ins. Co.*,
    829 F. Supp. 695 (D. Del. 1993)..........................................................12, 18

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009)........................................................................................6

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007).........................................................................12

**OTHER AUTHORITIES**

Mark S. Rhodes, *Transfer of Stock* § 7.1 (7th ed. 2015)......................................................8

17 CFR § 240.15c6-1…………………………………………………........................13

FINRA Manual, Notice 10-38 ........................................................................................17

Defendants submit this reply brief in further support of their motion to dismiss (Adv. D.I. No. 16).

## **INTRODUCTION**

1.     There is no dispute that Defendants complied with the terms of the Plan and court orders in transferring the initial Unitholder Distribution to the transfer agent for distribution to Registered Unitholders as of the Record Date.  Nor is there any dispute that Plaintiffs were <u>not</u> unitholders as of the Record Date.  At its core, the issue presented in this case is quite simple: should Defendants be liable for not paying Plaintiffs distributions when the Canadian Court and this Court ordered that Defendants cannot be liable for payments and distributions in compliance with the Plan? The answer is no, and Plaintiffs cite no case or authority holding or suggesting otherwise.

2.     The orders of the Canadian Court and this Court, as well as the release provisions in the Plan itself, require that all claims be dismissed. <u>First</u>, the Canadian Court, through the Sanction Order, explicitly ordered that Defendants cannot be liable for payments and distributions to unitholders in accordance with the Plan, and this Court recognized and gave full effect to that order throughout the United States through its Recognition Order.  <u>Second</u>, this Court likewise ordered that Arctic cannot be liable for complying with the Plan. Because all claims relate to payment of the distribution to unitholders under the Plan, they are barred by these unambiguous orders. <u>Third</u>, the Plan and this Court's Recognition Order contain broad releases that protect Defendants from any liability for any acts occurring on or before the Plan Implementation Date "arising out of or in connection with" Arctic's business, the Plan, or the insolvency proceedings. This general release is enforceable and likewise bars all claims. <u>Fourth</u>, Plaintiffs' Due Process argument is meritless: Plaintiffs' interests as unitholders were adequately

represented, the unitholders who sold their units to Plaintiffs approved the Plan and the releases therein, and this Court ruled that "due and sufficient" notice of the insolvency proceedings had been provided and that no further notice needed to be given.

3.      There is no authority supporting Plaintiffs' claim that FINRA rules trump the Plan. Plaintiffs contend that Defendants had a duty to comply with allegedly "concurrent and additional obligations" mandated by the SEC and FINRA that would have entitled Plaintiffs to payment as if they were unitholders as of the Record Date. This argument lacks merit. <u>First</u>, Plaintiffs identify no authority holding that Defendants were subject to the jurisdiction of the SEC or FINRA in connection with the distribution under the Plan or had a duty to comply with SEC and FINRA rules instead of the Plan. In a case that addressed this precise issue and that Plaintiffs badly misread, the court held that FINRA rules do not "trump the confirmed Plan." *Karathansis v. THCR/LP Corp.*, No. 06-1591, 2007 WL 1234975, at *8 n.18 (D.N.J. Apr. 25, 2007). <u>Second</u>, Defendants could not "harmonize" the Plan and the rules, as Plaintiffs urge, by paying twice, because that would contradict the Plan and violate the court orders. Contrary to Plaintiffs' assertion, *Karathansis* did not hold that the debtor in that case should have paid twice; it simply recognized that the debtor in that case may have to pay twice because it failed the first time to comply with the confirmed plan.

4.      Even if Defendants were subject to and had a duty to comply with the SEC and FINRA rules, they did not owe that duty to Plaintiffs, and Plaintiffs are not the proper parties to enforce those rules. Plaintiffs go to great lengths to argue that the "entire, detailed U.S. regulatory scheme relating to" distributions applies to Arctic, a Canadian issuer whose units were never qualified to trade, and never did trade, on a U.S. exchange, and accuse Defendants of intentionally disregarding that scheme, although the motive for

-2-

such behavior is never stated. But there indisputably is no private right of action under SEC Rule 10b-17 or FINRA rules. Plaintiffs try to shoe-horn such claims into common law fraud and negligence-based claims, yet they cite no authority to support that effort. All the FINRA-related cases Plaintiffs rely upon involve broker dealers, and even then, the courts are using FINRA rules only to determine the standard of care for the broker dealers, not to authorize a private right of action against an issuer for violation of the rules. The SEC alone is empowered to enforce the rules at issue here—Plaintiffs are not, no matter how they style their claims.

5.      At bottom, Plaintiffs purchased their units on the OTC Pink Market when they knew or should have known that their purchases would not settle by the Record Date. Their logic is that they were entitled to rely on the fact that the price of the units did not adjust downward after the Record Date, and, they argue, that must have meant that they were paying for the right to receive the distribution. But that logic is flawed: many factors could have influenced the market price, including the fact that the amount of the distribution was unknown—to Defendants, the Monitor, and everyone else. That uncertainty was disclosed to the market in multiple press releases. Plaintiffs knew with perfect clarity that only unitholders as of December 18, 2014 were entitled to receive the distribution. They had no reasonable basis therefore to believe they would receive the distribution and were not justified in relying on the lack of price movement. For all these reasons, the Court should dismiss all claims with prejudice.

## ARGUMENT

## I.      The Court Orders and Plan Release Are Enforceable and Bar All of Plaintiffs' Claims.

6.      As stated in Defendants' opening brief (Opening Br. ¶¶ 24–31), all of

Plaintiffs' claims are barred by the Canadian Court's Sanction Order, this Court's Recognition Order, and the release in the Plan. The orders and release were intended to cover each of Plaintiffs' claims and are enforceable against Plaintiffs. None of the arguments in Plaintiffs' opposition brief compels a different conclusion.

### A.    The court orders and Plan release broadly cover the subject of Plaintiffs' claims.

7.    Plaintiffs do not dispute that the Canadian Court specifically ordered that Defendants cannot be liable for any claims arising out of the payments and distributions under the Plan to unitholders:

> THIS COURT ORDERS that none of the Monitor, the CPS, the Trustees, the Arctic Glacier Parties, or any individuals related thereto shall incur any liability as a result of payments and distributions to Unitholders, in each case on behalf of AGIF, once such distribution or payment has been made by the Monitor to, and confirmation of receipt has been received by the Monitor from, the Transfer Agent.

Sanction Order ¶ 40. This provision expressly covers all of Plaintiffs' claims, which indisputably relate to payments and distributions to unitholders. This Court gave this provision and all others in the Sanction Order "full force and effect in the United States." Recognition Order ¶ 2. Plaintiffs never once address the substance of this order in their opposition brief. Based on this order, all claims should be dismissed.

8.    What's more, Plaintiffs do not dispute that this Court likewise declared that no liability can arise from Arctic's compliance with the Plan or the Sanction Order:

> Neither the Debtors nor the Monitor shall incur any liability as a result of acting in accordance with the terms of the Plan and this Sanction Recognition Order.

Recognition Order ¶ 9. This order also requires dismissal of the claims.

9.    These two court orders serve a proper and essential purpose: it would be

exceedingly unfair to expose Defendants to liability for carrying out the Plan. In other words, had Defendants done what Plaintiffs demand and thereby failed to comply with the express terms of the Plan, they could have faced claims from other unitholders who relied on the clear and unambiguous terms of the Plan. *See* Plan § 9.1 (excluding from release obligations created by the Plan); *see, e.g.*, *Karathansis*, 2007 WL 1234975, at *6 ("[T]he Debtor was obliged to instruct its disbursing agent to make distributions according to the terms of the Plan.").

10.     In addition, both orders are "res judicata as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989); *see also Stoll v. Gottlieb*, 305 U.S. 165 (1938) (bankruptcy confirmation order barred creditor from litigating its claim). This is true even if they conflict with non-bankruptcy law, which is not the case here. *See In re Bowen*, 174 B.R. 840, 847 (S.D. Ga. 1994); *In re Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990). Plaintiffs do not refute this rule of law. Rather, Plaintiffs argue that they are not suing Defendants "because of any acts in accordance with the Plan and Recognition Order." Opp. Br. ¶ 51. But that is precisely what they are doing. The court orders obligated Arctic to follow the Plan by transferring the initial Unitholder Distribution to the transfer agent for distribution to unitholders as of the Record Date. Plan § 6.2. Now Plaintiffs are seeking to hold Defendants liable for this action. To allow them to sue based on the spurious distinction Plaintiffs make—namely, that they are suing for violations of market regulations, not for acts done according to the Plan or court orders—would directly violate the court orders.

11.     If there were any doubt that the claims are barred by the court orders, it should be resolved by the release found in the Plan and this Court's Recognition Order.

-5-

Using expansive language, the release bars all claims against Defendants "in any way related to, or arising out of or in connection with" the Plan, the insolvency proceeding, or Arctic's business affairs. Plan § 9.1; *see also* Recognition Order ¶ 5; *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 138 (2009) (phrase "arising out of or related to" in a bankruptcy release is "expansive").[1] The plain language of the general release covers the conduct alleged in this dispute.[2] Indeed, Plaintiffs do not deny that their claims "arise out of" and are "related to" the Plan. Nor could they, since all their claims are connected to whether they are entitled to distributions under the Plan.

12.    Plaintiffs respond, instead, by arguing that the release cannot exempt Defendants from liability for any conduct that occurred after the Plan and Recognition Order were signed. Opp. Br. ¶¶ 40, 42, 44. But this argument is based on a faulty premise. The dates the Plan and Recognition Order were signed are not significant; the release jettisons any claims for conduct occurring on or before the ***Plan Implementation Date***, not merely for conduct occurring before the Plan and Recognition Order were signed. Plan § 9.1 (releasing claims "taking place on or prior to the later of the Plan Implementation Date"); Recognition Order ¶ 5 (same).[3] And there is no dispute that all of the conduct Plaintiffs complain about occurred before the Plan Implementation Date.

13.    Releases of liability in plans of compromise or arrangement are meant to provide finality and to protect parties from liability from complying with the terms of the

---

[1] The orders of the Canadian Court and this Court likewise expressly prohibit all "Persons … from commencing … any actions, suits, demands or other proceedings of any nature or kind … against the Releasees." Sanction Order ¶ 40; Recognition Order ¶ 6.

[2] Releases such as these have been upheld by multiple courts. *See* Opening Br. ¶ 30 (citing cases enforcing non-debtor, third-party releases approved by Canadian courts).

[3] Also, the releases expressly contemplate that claims will arise after the date the Plan and court orders were signed, since they bar all claims "whether known or unknown … foreseen or unforeseen, existing or hereafter arising." Plan § 9.1; Recognition Order ¶ 5.

plan—the very same liability that Plaintiffs are improperly seeking to impose here. *Karathansis*, 2007 WL 1234975, at *8 (citing cases).[4] Under the clear, unambiguous limitations and releases contained in the court orders and Plan, Defendants are not liable for any of the claims asserted, so they must be dismissed.

**B.    The court orders and Plan release are enforceable against Plaintiffs.**

14.    The court orders and Plan release are enforceable against Plaintiffs. The only arguments Plaintiffs make that they are not enforceable are (1) that they are circumscribed by some "applicable law" that they do not identify[5] and (2) that they violate Plaintiffs' due process rights. Neither argument has merit.

15.    The general release in the Plan affirmatively extinguishes all claims "to the full extent permitted by applicable law." Plan § 9.1; *see also* Recognition Order ¶ 5. Plaintiffs contend that this language means that Defendants have the burden to identify claims that can be "lawfully extinguished" under "applicable law."  Opp. Br. ¶ 41. But Plaintiffs have it backwards. The release is presumptively valid, unless ***Plaintiffs*** can show why it is not valid. In other words, the "applicable law" language by itself does nothing to limit the enforceability of the releases. For it to have any effect, Plaintiffs must identify some law that limits the enforceability of the releases.

16.    The only law that Plaintiffs allege restricts the application of the release is

---

[4] *See, e.g.*, Fifteenth Report of the Monitor Alvarez & Marsal Canada, Inc., *In re Arctic Glacier Int'l Inc., et al.*, No. CI-12-01-76323 (Can. M.Q.B. May 14, 2014) ("Fifteenth Monitor's Report") ¶ 4.52 (Monitor contending that Plan releases are justified because of the "efforts of … the Arctic Glacier Parties … along with the cooperation and assistance of the Trustees, Officers, Directors, employees … that have contributed to the overall scheme and effect of the Plan that provides for payment of all Affected Creditors' Proven Claims in full … and distributions to Unitholders ….") (attached as Exhibit 1 to the *Second Declaration of Marcos A. Ramos, Esq. in Support of Defendants' Motion to Dismiss the Complaint* (the "Second Declaration") filed herewith).

[5] Notably, Plaintiffs do not contend that this "applicable law" argument applies to the court orders that limit liability for complying with the Plan, just to the general release in the Plan and Recognition Order.

the Due Process Clause of the U.S. Constitution. But this argument has no merit. In bankruptcy, claim holders have due process rights that require "notice reasonably calculated, under all circumstances, to inform interested parties of the pendency of an action and to give them an opportunity to present their objections." *In re Mariner Post-Acute Network, Inc.*, 303 B.R. 42, 46 (Bankr. D. Del. 2003) (internal citation omitted). Due process does not require "actual notice of every step in a bankruptcy proceeding"; rather, it requires that known creditors be notified of the debtor's bankruptcy filing and the claims bar date. *Id.* (internal citation omitted).

17.    Also, it is a long-standing principle that a buyer of a claim in an insolvency proceeding does not enjoy greater rights than the original claim holder; to the contrary, the buyer "simply moves into the shoes of the assignor." *Goldie v. Cox*, 130 F.2d 695, 720 (8th Cir. 1942) (citing *Fidelity Mut. Ins. Co. v. Clark*, 203 U.S. 64, 74 (1906)); *In re KB Toys, Inc.*, 470 B.R. 331, 342 (Bankr. D. Del. 2012) ("[A] claim in the hands of a transferee has the same rights and disabilities as the claim had in the hands of the original claimant."). Thus, when Plaintiffs bought their 12 million units, they acquired the same rights and obligations that the previous unitholders had under the Plan.[6]

18.    Plaintiffs do not argue that the due process rights of the previous unitholders were violated during the Canadian or U.S. bankruptcy proceedings. Such an argument would have little merit in light of the fact that they received notice of the relevant events. Indeed, the previous unitholders received notice of the Plan and the release contained in the Plan.  *See* Fifteenth Monitor's Report ¶ 1.7. Further, Arctic held a meeting of unitholders to consider and vote on the Plan, and notice of the meeting was

---

[6] *See* Mark S. Rhodes, *Transfer of Stock* § 7.1 (7th ed. 2015) ("As a general rule, the [stock] transferee takes no greater rights and is subject to the same liabilities as the [stock] transferor.").

provided to all unitholders. Fifteenth Monitor's Report ¶ 5.10. Also, the Canadian Court found that there had been sufficient notice to unitholders about the meeting, as well as sufficient service of documents related to the meeting. Sanction Order ¶ 3. At the meeting, the Plan was accepted by 99.81% of the unitholders who voted on the Plan. Seventeenth Monitor's Report ¶¶ 4.19–.20 (attached as Exhibit D to the Declaration filed with Opening Brief). Following this full and open process and confirming vote, each unitholder was "deemed to have consented and agreed to all of the provisions of the Plan in their entirety." Sanction Order ¶ 19; *see also* Plan § 11.1. Once approved, the Plan was binding not only on the voting unitholders but also on their "successors and assigns." Plan § 1.3. And this Court ruled that "due and sufficient notice of the Motion [seeking approval of the Sanction Order] and the Sanction Order" had been given and that "no other notice or further notice need be provided." Recognition Order p.2. In addition, this Court held a hearing to consider the motion, and resolved any objections to it. *Id.*

19.     Thus, the record shows that the previous owners of the units currently held by Plaintiffs received appropriate notice sufficient to satisfy due process and had ample opportunity to be heard regarding the Plan.[7] For this reason, Plaintiffs' heavy reliance on *Jones v. Chemetron Corp.*, 212 F.3d 199 (3d Cir. 2000) is misplaced. In *Chemetron*, a claimant sought to recover for injuries sustained from exposure to radioactive and other hazardous substances. *Id.* at 209. The court held that she could pursue her claims against the debtor because she was not born before the claims bar date had expired and therefore had no notice of or representation at the bankruptcy proceedings. *Id.* at 210. Unlike the unborn claimant in *Chemetron*, Plaintiffs here bought their claims from unitholders who

---

[7] Not only have Plaintiffs failed to allege that the original unitholders did not receive adequate notice, they likewise do not allege that they themselves did not have notice of the relevant events.  Opening Br. ¶¶ 12–16.

had notice of the insolvency proceeding and participated in it. Because Plaintiffs simply "step into the shoes" of the selling unitholders, they were fully notified in the insolvency proceedings and have no argument that their due process rights were violated.

20.     In sum, the court orders and Plan release are enforceable against Plaintiffs and foreclose any liability for the claims asserted.[8] Thus, all claims must be dismissed.

## II.     The Fraud Claims in Counts V and VI Have No Merit.

21.     Counts V and VI for securities fraud and common law fraud fail because they are implausible on their face. First, there are no allegations of intent, and Plaintiffs' recklessness allegations do not even remotely show an extreme departure from the standards of ordinary care. Second, Plaintiffs have failed to present any legal support that Defendants had a duty to disclose any of the alleged omissions. Thus, the fraud claims in Counts V and VI must be dismissed.

### A.     The fraud allegations do not give rise to a strong inference of scienter.

22.     Plaintiffs do not dispute that they have not alleged any facts showing that Defendants acted with an intent to deceive Plaintiffs. Nor would any such allegations be plausible, since Defendants had no motive or incentive to defraud any of the unitholders, including Plaintiffs, because the amount of money paid in the distribution was the same whether it went to Plaintiffs or the rightful unitholders as of the Record Date. Instead, their allegation of scienter rests entirely on the baseless theory that Defendants were reckless in not disclosing an ex-date and that there was no change in the market price of Arctic units after Arctic issued a press release on December 15, 2014, announcing a unitholder distribution. These allegations fall far short of satisfying the recklessness

---

[8] Defendants are not privy to the purchase agreements between Plaintiffs and the sellers whose units Plaintiffs bought, but the terms of those agreements may support a claim against the sellers, without recourse to Defendants.

standard.

23.    To plead recklessness, a plaintiff must allege not merely simple or inexcusable negligence, but "an extreme departure from the standards of ordinary care." *In re Alpharma Sec. Litig.*, 372 F.3d 137, 149 (3d Cir. 2004). Although Plaintiffs contend that it was "quintessential recklessness" for Defendants to not disclose that "the market was not reacting to the [December 15th] announcement in a way that made any sense" (Opp. Br. ¶ 112), no such disclosure could have even been made because the distribution amount was not known until later. Moreover, the case law Plaintiffs cite (Opp. Br. ¶ 112) either directly undermines their argument or is not remotely on point.[9] In truth, Defendants were not reckless: they took many steps to inform the unitholders and the public about the distribution. Opening Br. ¶ 41.

24.    Still, Plaintiffs make the spurious argument that these measures actually show scienter because the public announcements did not disclose that "Defendants had decided to make the ex-date December 16." Opp. Br. ¶ 113. To begin with, Defendants did not set the ex-date: Plaintiffs themselves argue Defendants did not have the power to do so. Opp. Br. ¶ 103; *see* Compl. ¶ 34. Also, Plaintiffs cannot satisfy the scienter requirement merely by alleging an omission. Allegations of scienter and material omissions are two separate and distinct requirements to state a fraud claim, and they require unique proof. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 174 (3d Cir. 2000). Plaintiffs are improperly trying to conflate the two.

---

[9] In *Backman v. Polaroid Corp.*, the court held that the statements were not materially misleading when made and that they did not become misleading after the fact. 910 F.2d 10, 16–17 (1st Cir. 1990). The same is true of Defendants' statements at issue here. And *In re Quintel Entertainment Inc. Sec. Litig.*, the defendants had "publicly hyped" their partnership with AT&T and their ability to reduce customer chargebacks; when that partnership faltered and their chargebacks increased, the court held, the defendants had a duty to make a corrective disclosure. 72 F. Supp. 2d 283, 292 (S.D.N.Y. 1999). Here, in contrast, Defendants never learned any facts that rendered the December 15th press release incorrect or misleading.

25.     Nor is Plaintiffs' attempt to distinguish *Gold v. Ford Motor Co.* persuasive. The case is directly on point. Both in *Gold* and in this case, the plaintiffs sued for securities fraud based on the alleged failure to comply with Rule 10b-17. 937 F. Supp. 2d 526 (D. Del. 2013), *aff'd*, 577 Fed. Appx. 120 (Aug. 15, 2014). The *Gold* court held that the plaintiff's conclusory statements about recklessness were insufficient to satisfy scienter. 577 Fed. Appx. at 123. This Court should reach the same conclusion and dismiss the fraud claims.

**B.     Defendants had no duty to disclose the supposedly omitted information.**

26.     Plaintiffs' fraud claims in Counts V and VI should be dismissed for the additional reason that Defendants had no duty to disclose any of the omitted information.[10] Plaintiffs concede that no misrepresentations were in the press releases; their only allegation is that Defendants omitted certain information from the copious disclosures Arctic made about the distribution. But there is no liability for non-disclosure of even material information, unless there is an affirmative duty to disclose. *Winer Family Trust v. Queen*, 503 F.3d 319, 329 (3d Cir. 2007). And a plaintiff carries the burden of showing that such a duty exists. *Toner v. Allstate Ins. Co.*, 829 F. Supp. 695, 705 (D. Del. 1993). Here, Plaintiffs have failed to satisfy that burden.

27.     <u>First</u>, it is indisputable that soft statements of belief regarding one's compliance with the law need not be disclosed. *Kushner*, 317 F.3d at 830–31; *see* Compl. ¶ 98(a)–(b). None of Plaintiffs' cases compels a different conclusion.[11]  Although a false

---

[10] This argument compels dismissal of Count IV for negligent misrepresentation, as well.

[11] In each, the defendants had publicly stated or implied that they were in compliance with specific laws or regulations governing their business when they allegedly were not, whereas here Defendants did no such thing. *See Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 984 (8th Cir. 2012) (company claimed it had complied with FDA regulations); *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 640 (3d Cir. 1989) (company claimed it had complied with consumer protection laws); *In re*

statement about one's compliance may give rise to a duty to correct the statement, Plaintiffs did not allege that Arctic made a false statement about its compliance, and Plaintiffs' own cases confirm that "[s]ilence, absent a duty to disclose, is not misleading." *Pub. Pension Fund Grp.*, 679 F.3d at 984. In addition, Plaintiffs argue that they are not suing Defendants for not disclosing their beliefs, but rather for their "***decision*** to disregard the entire U.S. regulatory scheme." Opp. Br. ¶ 96. But Plaintiffs have not alleged in the complaint that Defendants affirmatively decided not to follow U.S. regulations. Such an allegation implies intent to break the law, requiring Plaintiffs to plead with particularity who made the decision, when it was decided, and why—none of which they have alleged.

28.     Second, Plaintiffs are wrong that Defendants had a duty to disclose that they "decided" when the ex-date would be. Opp. Br. ¶¶ 97, 113; *see* Compl. ¶ 98(c). As an initial matter, Plaintiffs cite no authority saying such a duty exists. More fundamentally, Defendants never "decided" when the ex-date would be because they had no power to do so, a point that Plaintiffs themselves admit. Compl. ¶ 34; Opp Br. ¶ 103. To be sure, units traded after December 15, 2014 did not settle in time for the buyers to be unitholders on the Record Date (December 18, 2014). But that was not due to a decision by Defendants; the industry standard for the settlement cycle is three days. 17 CFR § 240.15c6-1. Thus, any units traded after December 15 did not settle in time for the buyer to be a unitholder by December 18 as a result of normal market operations, and therefore did not carry the right to obtain the initial distribution. Defendants had no duty

_____

(continued…)

*Van DeMoolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 393 (S.D.N.Y. 2005) (risk disclosures implied compliance with NYSE rules); *Grossman v. Waste Mgmt., Inc.*, 589 F. Supp. 395 (N.D. Ill. 1984) (prospectus implied compliance with environmental laws).

to disclose information that a reasonable investor should have known. *See In re Donald J. Trump Casino Sec. Litig. Taj Mahal Litig.*, 7 F.3d 357, 377 (3d Cir. 1993).

29. <u>Third</u>, Plaintiffs fail to support their argument that Defendants had a duty to correct the December 15th press release, since nothing in the press release is alleged to be false. *See* Compl. ¶ 98(d). The duty to correct a prior statement arises only "when a company makes a historical statement that, at the time made, the company believed to be true, but as revealed by subsequently discovered information actually was not." *Oran v. Stafford*, 226 F.3d 275, 286 (3d Cir. 2000). In the press release, Defendants made no representation about the ex-date or their compliance with market regulations. Nor did they disclose anything about how the price of Arctic units should be impacted by the announcement of the Record Date. So there was nothing to correct or update. *Oran*, 226 F.3d 275, 286 (3d Cir. 2000) (finding no duty to correct an earlier press release that did not convey any incorrect or misleading information). None of Plaintiffs' cases compels a different conclusion. *See supra* note 10. Also, many market factors could have caused the unit price to not react to the initial announcement, including the fact that the distribution amount was unknown at the time, which Arctic disclosed. Opening Br. ¶¶ 12, 15. Once Arctic announced the distribution amount, the unit price lowered. Compl. ¶ 45.

30. In sum, Plaintiffs cite no support for their claim that Defendants had a duty to disclose the omitted information, so their fraud claims must be dismissed.

## III. **The Negligence-Based Claims in Counts I, II, and IV Have No Merit.**

31. Nothing in Plaintiffs' opposition brief cures the numerous defects that plague the negligence-based claims, so Counts I, II, and IV should be dismissed. Fundamentally, Plaintiffs are trying to turn a fraud claim that must be brought by the SEC into a garden variety negligence claim subject to a reduced standard of proof. No

-14-

authority supports such a proposition.

A.    **Count I should be dismissed because Defendants' only duty was to comply with the clear, unambiguous terms of the Plan.**

32.    Count I should be dismissed because Plaintiffs have not shown that Defendants owed them any duty other than to comply with the clear, unambiguous terms of the Plan. Plaintiffs do not dispute that U.S. and Canadian law require a debtor to carry out the plan (Opening Br. ¶ 53), or that a confirmed plan is binding on all stakeholders. *See Karathansis*, 2007 WL 1234975, at *5. Nor do Plaintiffs dispute that Defendants executed the Plan properly: on January 22, 2015, the Monitor, on behalf of Arctic, transferred the initial distribution to the transfer agent, which in turn paid it to the Registered Unitholders as of December 18, 2014. *Compare* Plan § 6.2 *to* Twenty-third Report of the Monitor Alvarez & Marsal Canada, Inc., *In re Arctic Glacier International Inc., et al.*, No. CI-12-01-76323 (Can. M.Q.B. Nov. 9, 2015) (attached as Exhibit 2 to the Second Declaration) ¶ 1.10.

33.    Plaintiffs contend, however, that Defendants should have followed ***both*** the Plan and FINRA rules. But if Arctic had followed UPC Rule 11140, then the distribution would have had to be made not to the unitholders who held the units on the Record Date (December 18, 2014), as the Plan required, but to the unitholders who held the units on the date of the distribution (January 22, 2015). *Karathansis*, 2007 WL 1234975, at *8. Nor is it correct, as Plaintiffs argue, that Defendants could simply "harmonize" the Plan and FINRA rules "by paying dividends to those entitled to receive payment ***under either one***." Opp. Br. ¶ 57 (emphasis in original; citing *Karathansis*).

34.    *Karathansis* held no such thing; in fact, it held just the opposite, ruling that notwithstanding the fact that the debtor's transfer agent had paid the distribution

-15-

according to FINRA rules, the debtor still had to pay the distribution according to the plan. 2007 WL 1234975, at *8. The court did not hold that a debtor must pay according to **both** FINRA and the plan, as Plaintiffs argue. Nor would such a ruling make any sense because it would harm the unitholders who did not trade by reducing their later distributions. In the end, Defendants had a duty to follow the Plan, not UPC Rule 11140. *In re Howe*, 913 F.2d at 1143; *Karathansis*, 2007 WL 1234975, at *8 n.18 (bankruptcy court decision interpreting "UPC 11140 as to trump the confirmed Plan constitutes an errant conclusion of law."). Count I should therefore be dismissed.

> **B.      Count II should be dismissed because Plaintiffs identify nothing to support a conclusion that Defendants owed them a duty to comply with Rule 10b-17 or the FINRA rules.**

35.      Plaintiffs have failed to identify any authority holding that Defendants owed them a duty to comply with Rule 10b-17 or the FINRA rules governing the payment of distributions. If this Court allows Plaintiffs to sue Defendants for negligent failure to comply with Rule 10b-17 and the FINRA rules, it would be the first to allow such a claim. This unprecedented action should not be permitted, and Plaintiffs' negligence claim in Count II should be dismissed.

36.      Plaintiffs concede, as they must, that Defendants are not members of FINRA, which is a self-regulatory organization with authority to oversee broker dealers. And Plaintiffs cite no authority that UPC Rule 11140 applies to issuers like Arctic.[12] Moreover, Plaintiffs cite no case where a private party has successfully enforced Rule 6490 against an issuer, much less a Canadian issuer, like Arctic. Even if Arctic had a duty

---

[12] Although Plaintiffs contend that *Karathansis* reached this holding, it did not. It simply held that unitholders as of the record date were entitled to plan distributions, notwithstanding the fact that the debtor's clearing agent had paid the distributions pursuant to Rule 11140. *See* 2007 WL 1234975, at *4. The plain language of Rule 11140 makes it clear that it governs conduct only of FINRA members. *See* Opening Br. ¶ 60.

to comply with FINRA rules, it did not owe that duty to Plaintiffs. FINRA Rules 6490 and 11140, as well as Rule 10b-17 of the Exchange Act, do not grant a private right of action, *see Gold*, 937 F. Supp. 2d at 531, a point Plaintiffs do not refute. Opp. Br. ¶ 71.

37.    Nor are those rules specifically intended to benefit unitholders like Plaintiffs; rather, they are designed for market operations, since notice is made to FINRA, not to investors. *Gold*, 937 F. Supp. 2d at 531. Thus, it is not for private parties like Plaintiffs here to enforce this regulatory scheme. If FINRA believes its rules have been violated, it can refer the matter to the SEC, which can elect whether to bring an enforcement action. FINRA Manual, Notice 10-38, at 8 (attached as Exhibit 3 to the Second Declaration) ("Where FINRA Operations staff has actual knowledge, it will use its best efforts to provide a list of non-complying issuers to the SEC staff."). There is no authority, however, that grants private parties the right to usurp FINRA's or the SEC's role and enforce the regulatory scheme. Indeed, the cases Plaintiffs cite merely use the FINRA rules to set the standard of care that a broker dealer owes to a client. Opp. Br. ¶ 71.[13] They do not hold that an issuer owes a duty to a shareholder to comply with FINRA rules, nor do they allow shareholders to sue issuers for violating FINRA rules.

38.    Although Plaintiffs seek to place the burden on Defendants to identify a case holding that they do not owe unitholders a duty to comply with FINRA rules (Opp. Br. ¶ 75), Plaintiffs have it backwards: it is their obligation to show in the case law that such a duty exists. *Toner*, 829 F. Supp. at 705. They have failed to produce any case in

---

[13] *See Shields v. Newbridge Secs., Inc.*, 1992 Bankr. LEXIS 1706, at 19–20 (Bankr. E.D. Pa. Oct. 29, 1992) (negligence claim against clearing broker for not adequately vetting an introducing broker); *Mihara v. Dean Wittier & Co.*, 619 F.2d 814, 824 (9th Cir. 1980) (claims against broker for fraud and breach of fiduciary duty based on excessive trading in client's account); *Javitch v. First Montauk Fin. Corp.*, 279 F. Supp. 2d 931, 940 (N.D. Ohio 2003) (negligence and fraud claims based on broker's failure to investigate source of funds in account); *Scott v. Dime Sav. Bank*, 886 F. Supp. 1073, 1081 (S.D.N.Y. 1995) (negligence claim against broker based on violation of NASD suitability rule).

which a plaintiff successfully even alleged a negligence claim based on a violation of Rule 10b-17. Nor have Plaintiffs cogently explained why a claim based on a violation of Rule 10b-17, which was promulgated under the authority of Section 10(b) of the Exchange Act as an example of a manipulative or deceptive act, could possibly be recast under a more lenient negligence standard. *See Lutgert v. Vanderbilt Bank*, 508 F.2d 1035, 1038 (5th Cir. 1975). They cite no examples where that was allowed. Opp. Br. ¶ 77.[14] Similarly, Plaintiffs cannot show that their claim for negligence based on a violation of Rule 10b-17 should be allowed by citing to cases that permit negligent misrepresentation claims in addition to Rule 10b-5 fraud claims.[15] Opp. Br. ¶ 80 n.11. Thus, Count II should be dismissed.

### C. Count IV should be dismissed because Plaintiffs do not have standing to sue for negligent misrepresentation and have not pled reliance.

39.      Count IV for negligent misrepresentation must be dismissed because, as discussed in Section II.B, Defendants had no duty to disclose the omitted information. It also fails because Plaintiffs lack standing and have not alleged justifiable reliance.

40.      Plaintiffs do not deny that Delaware courts have repeatedly held that a plaintiff may not sue for negligent misrepresentation based on documents released to the public at large, such as press releases. *See, e.g.*, *Brug v. The Enstar Group, Inc.*, 755 F. Supp. 1247, 1258 (D. Del. 1991). The rationale for this is simple: a party owes a duty only to people identifiable before the injury occurs and members of the public at large are not identifiable. *See Brickman v. Tyco Toys, Inc.*, 722 F. Supp. 1054, 1062 (S.D.N.Y. 1989). The press release at issue was released on December 15, 2014, a day before

---

[14] *See supra* note 13.

[15] Negligent misrepresentation is a well-recognized cause of action at common law, whereas negligent failure to comply with Rule 10b-17 has never been recognized by any court. Plaintiffs have cited no authority to support a negligent misrepresentation claim for alleged violations of Rule 10b-17.

Plaintiffs started buying Arctic units. Thus, when the allegedly misleading statement was made, Plaintiffs were still members of the public, and Defendants owed them no duty of care in making their public statements. Plaintiffs' cases do not compel a different conclusion.[16] Opp. Br. ¶ 93. Accordingly, Plaintiffs do not have standing to sue.

41.      Even if Plaintiffs had standing to sue for negligent misrepresentation, Count IV should be dismissed because they did not plead justifiable reliance. Plaintiffs do not deny that their allegations of reliance rest solely on the fraud-on-the-market theory.[17] Numerous courts have held as a matter of law that the OTC market is not efficient, *see* Opening Br. ¶ 83, but even if this Court were to disagree with this line of cases, Plaintiffs allege no facts to show that the market for Arctic's units was efficient. *See generally In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 208 (E.D. Pa. 2008), *aff'd sub nom.*, 639 F.3d 623 (3d Cir. 2011) (listing ten factors relevant to pleading fraud-on-the-market); *see* Compl. ¶¶ 101, 106–07, 110–11, 121–22.   Thus, Count IV fails because Plaintiffs have not alleged justifiable reliance. *See* Opening Br. ¶¶ 85–87.

## IV.      The Individual Defendants Did Not Owe Unitholders Any Fiduciary Duty So Count III Must Be Dismissed.

42.      Count III must be dismissed because the Individual Defendants owed a

---

[16] None of them held that under Delaware law a member of the public at large can sue a company for negligent misrepresentation based on a press release. *See Halpern v. Lightyear Network Solutions, Inc.*, No. 12-cv-340, 2012 WL 4482680 (D. Nev. Sept. 26, 2012) (shareholder alleged fraud and negligent misrepresentation based on statements company made to him), *motion granted by* 2013 WL 275598 (D. Nev. Jan. 23, 2013); *In re Adobe Sys., Inc. Sec. Litig.*, 767 F. Supp. 1023 (N.D. Cal. 1991) (class of shareholders alleged fraud and negligent misrepresentation); *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140 (N.D. Cal. 1989) (same).

[17] An allegation that Plaintiffs relied solely on the market price movement is implausible and unreasonable on its face because Plaintiffs knew that the amount of the distribution was unknown and undisclosed during the exact period they bought their units, and thus the market could not have incorporated the distribution into the price of the units.

fiduciary duty to Arctic to comply with the clear terms of the Plan.[18] There is no dispute they did, so the claim should be dismissed. Moreover, Plaintiffs have not properly alleged that, under Canadian law, the Individual Defendants owed unitholders a fiduciary duty. The key case, *Locking v. McCowan*, is directly on point, thoroughly analyzing a trust agreement similar to the one here. In holding that unitholders of a trust could not sue officers or trustees for breach of fiduciary duty, the *Locking* court articulated five reasons why no fiduciary duty to unitholders exists as a matter of law, each of which applies with equal force to this case.[19] In contrast, the cases cited by Plaintiffs provide no reasoned analysis of the issue. Opp. Br. ¶¶ 85–87. What's more, Plaintiffs do not respond to the argument that the Arctic trust agreement limits the fiduciary duties of the trustees to no greater than those imposed on a director of a corporation, and the Canadian Supreme Court has held that directors owe fiduciary duties only to the corporation. *BCE Inc. v. 1976 Debentureholders*, 3 S.C.R. 560 (2008). Thus, Count III must be dismissed.[20]

## CONCLUSION

43. For the reasons stated above and in the opening brief, the Court should dismiss all claims against Arctic and the Individual Defendants with prejudice.

---

[18] Defendants' compliance with the Plan was expected, as demonstrated by the fact that Plaintiffs are the only unitholders pursuing a claim in the Unitholder Claims Process.

[19] Plaintiffs urge the Court to ignore *Locking* on spurious grounds. That *Locking* was a "lower court decision of the Ontario Superior Court of Justice" (Opp. Br. ¶ 88) does not diminish it in any way, especially since Plaintiffs' own case law is from that same court. Nor is there any reason to ignore it because it applies Ontario, rather than Alberta, law. *Id.* Plaintiffs fail to show that the law of Alberta is any different than the law of Ontario in this respect.

[20] The Court should deny Plaintiffs' request to amend their complaint to add a claim against the Individual Defendants for breach of trust because such claims were explicitly disallowed in the releases. Plan § 9.1 (releasing claims based on "fiduciary or other duty").

Dated: April 7, 2016
     Wilmington, Delaware

Respectfully submitted,

_____
Paul N. Heath (No. 3704)
Marcos A. Ramos (No. 4450)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Email: heath@rlf.com
Email: ramos@rlf.com
Email: schlauch@rlf.com
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

David Woodcock (Texas Bar No. 24028140)
Mark W. Rasmussen (Texas Bar No. 24086291)
Arielle S. Tobin (Texas Bar No. 24079423)
Allison L. Fuller (Texas Bar No. 24087547)
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Email: dwoodcock@jonesday.com
Email: mrasmussen@jonesday.com
Email: atobin@jonesday.com
Email: afuller@jonesday.com
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

*Attorneys for Defendants*